**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| ALEXANDER RAIMO, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No.:  :20-CV-00634-SEP |
| v. | **JURY TRIAL DEMANDED** |
| WASHINGTON UNIVERSITY IN ST. LOUIS, | |
| Defendant. | |

**<u>FIRST AMENDED CLASS ACTION COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

I.      NATURE OF ACTION ..................................................................................................1

II.     JURISDICTION AND VENUE ....................................................................................3

III.    PARTIES ......................................................................................................................4

IV.     FACTS .........................................................................................................................5

        A.      Background ........................................................................................................5

        B.      The Novel Coronavirus Shutdowns And Defendant's Campus Closure ...............11

        C.      Defendants' Refusal To Issue Tuition, Fee, And Room And Board Refunds
                Constitutes A Breach of Contract ......................................................................14

V.      CLASS ACTION ALLEGATIONS .............................................................................19

VI.     CAUSES OF ACTION ...............................................................................................23

        COUNT I  BREACH OF CONTRACT .......................................................................23

        COUNT II  BREACH OF IMPLIED CONTRACT .....................................................24

        COUNT III  UNJUST ENRICHMENT ......................................................................26

        COUNT IV  CONVERSION ......................................................................................28

PRAYER FOR RELIEF .........................................................................................................29

JURY DEMAND ...................................................................................................................29

Plaintiff, ALEXANDER RAIMO, individually and on behalf of all others similarly situated, for his First Amended Class Action Complaint against Defendant WASHINGTON UNIVERSITY IN ST. LOUIS ("WUSTL"), based upon personal knowledge as to his own actions and based upon the investigation of counsel regarding all other matters, complains as follows:

## I.      NATURE OF ACTION

1.      This First Amended Class Action Complaint comes during a time of hardship for so many Americans, with each day bringing different news regarding the novel coronavirus COVID-19.[1] Social distancing, shelter-in-place orders, and efforts to 'flatten the curve' prompted colleges and universities across the country to shut down their campuses, evict students from campus residence halls, and switch to online "distance" learning.

2.      Despite sending students home and closing its campuses, Defendant continues to charge for tuition and fees as if nothing has changed, continuing to reap the financial benefit of millions of dollars from students. Defendant does so despite students' complete inability to continue school as normal, occupy campus buildings and dormitories, or avail themselves of school programs and events. So while students enrolled and paid Defendant for a comprehensive in-person academic experience, Defendant instead offers Plaintiff and Class Members something far less: a limited online experience presented by Google or Zoom, void of face-to-face faculty and peer interaction, separated from program resources, and barred from facilities vital to study. Plaintiff and Class Members did not bargain for such an experience.

3.      While some colleges and universities have promised appropriate and/or proportional refunds, Defendant excludes itself from such other institutions treating students fairly,

---

[1] Plaintiff and Plaintiff's counsel are mindful of the severe impact of the coronavirus on all aspects of society. To minimize the burden on the Court and to reasonably accommodate Defendant, Plaintiff will work with Defendant to reach an agreeable schedule for their response to this Class Action Complaint.

equitably, and as required by the law.  And for some students and families, Defendant does so based on outdated financial aid equations and collections, without taking into account disruptions to family income, a particular concern now where layoffs and furloughs are at record levels.

4.      In response to COVID-19, on or about March 11, 2020, Washington University decided to migrate all, or substantially all, classes online. Courses would resume on March 23, 2020 and be conducted online for the remainder of the Spring 2020 semester.

5.      Despite the provision of an entirely remote undergraduate and graduate studies experience, Defendant refuses to refund or reimburse Plaintiff and similarly situated WUSTL students the tuition and fees they paid for the promised on-campus instruction, services they are not being provided, events they cannot attend, and programs and activities that have been curtailed, discontinued, or closed.

6.      Essentially, students have paid WUSTL for in-person instruction that is no longer available to them, access to buildings they can no longer enter, technology, programs and services that WUSTL is no longer providing, and activities that are no longer available. WUSTL is thus profiting from COVID-19 while further burdening students and their families—many of whom have been laid off, become ill, lost loved ones, or are otherwise already bearing the brunt of the COVID-19 pandemic. The result is an enormous windfall to WUSTL. Both contract and equity demand that WUSTL disgorge its ill-gotten funds.

7.      Defendant's actions have financially damaged Plaintiff and Class Members. Plaintiff brings this action because Plaintiff and Class Members did not receive the full value of the services paid, and did not receive the benefits of in-person instruction. Plaintiff and Class Members lost the benefit of their bargain and/or suffered out-of-pocket loss, and are entitled to recover compensatory damages, trebling where permitted, and attorney's fees and costs. This

lawsuit seeks disgorgement and monetary damages in the amount of prorated, unused amounts of tuition, room and board, and fees that Plaintiff and the other Class Members paid, the benefits of which will not be provided by Defendant.

## II.     JURISDICTION AND VENUE

8.      This Court has jurisdiction over the subject matter presented by this amended complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Class is a citizen of a State different from any Defendant, and in which the matter in controversy exceeds in the aggregate sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual Class Members in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6). Plaintiff is a citizen of New Jersey, whereas Defendant is a citizen of Missouri for purposes of diversity. Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A). Furthermore, Plaintiff alleges that more than two-thirds of all of the members of the proposed Class in the aggregate are citizens of a state other than Missouri, where this action is originally being filed, and that the total number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).[2]

9.      Venue is appropriate in this District because Defendant is located within the Eastern District of Missouri. And on information and belief, events and transactions causing the claims

---

[2] 90% of undergraduates attending Washington University in St. Louis are from out of state. https://wustl.edu/about/university-facts/.

herein, including Defendant's decision-making regarding its refund policy challenged in this lawsuit, has occurred within this judicial district.

### III.   PARTIES

10.     Plaintiff Alexander Raimo is a citizen and resident of the State of New Jersey. Plaintiff Raimo was enrolled as a full-time student during the Spring 2020 academic term at Defendant.

11.     Plaintiff is in good financial standing at Defendant, having paid in whole or in combination tuition, fees, costs, and/or room and board charges assessed and demanded by Defendant for the Spring 2020 term. Plaintiff paid Defendant for opportunities and services that he did not receive, including on-campus education, facilities, services, and activities.

12.     Plaintiff thus contracted for and paid Defendant for on-campus instruction, opportunities, facilities, and services for the Spring 2020 semester.

13.     Plaintiff enrolled at WUSTL to obtain the full experience of live, in-person courses and direct interactions with instructors and students, facilitated by the advertised small class and lecture size in the Olin Business School. Plaintiff chose WUSTL due to the accessibility of professors and camaraderie with classmates in both the classroom and on campus. Plaintiff also chose WUSTL due to the quality of facilities, student housing, and on campus amenities, which includes ranking number one for best college dorms and number three for best campus food according to The Princeton Review.[3]

14.     With WUSTL's campus closure, cancellation of campus events, suspension of many campus services and programs, and transition to exclusively online instruction during the

---

[3] https://www.princetonreview.com/college-rankings?rankings=best-college-dorms;
https://www.princetonreview.com/college-rankings?rankings=best-campus-food.

Spring 2020 semester, Plaintiff lost access to the on-campus instruction, opportunities, facilities, and services for which Plaintiff had bargained for by selecting—and paying tuition and fees for—in-person courses and experiences.

15.     Plaintiff has also lost all opportunity to utilize school resources. With WUSTL closing its doors and barring students from campus, Plaintiff lost vital access to campus libraries, as well as the ability to participate in school activities, including his intermural athletic team, intermural club competitions, and the numerous other on-campus social clubs he enjoyed. He cannot utilize the same educational resources ordinarily available to students.

16.     Defendant WUSTL is an institution of higher learning located in St. Louis, Missouri. Defendant provides Class Members with campus facilities, in-person classes, as well as a variety of other facilities for which Defendant charges Plaintiff and Class Members.

## IV.     FACTS

### A.     Background

17.     Founded in 1853, WUSTL has a current enrollment of approximately 13,763 full-time students, across seven schools, in over 90+ undergraduate programs and 65+ graduate programs.

18.     As of June 30, 2019, WUSTL's endowment totaled $8.9 billion, one of the top 20 largest university endowments in the United States. In that same year, Defendant collected $441.9 million in tuition and fees (net of scholarship allowance)—a $30 million increase from the year before.

19.     In June 2018, WUSTL raised a school record of $3.378 billion through *Leading Together,* a five-year fundraising campaign. The prior fundraising effort from March 2009–October 2012 raised more than $1 billion in gifts.

20.     Recently, WUSTL received an estimated $22.4 million from the Federal Government as part of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act").[4]

21.     While many schools nationwide offer and highlight remote learning capabilities as a primary component of their efforts to deliver educational value (*see, e.g.*, Western Governors University, Southern New Hampshire University, University of Phoenix-Arizona), Defendant is not such a school.

22.     Rather, a significant focus of Defendant's efforts to obtain and recruit students pertains to the campus experience it offers along with face-to-face, personal interaction with skilled and renowned faculty and staff.

23.     A few examples of such efforts to promote that experience follow.

24.     WUSTL's campuses "are located near the cultural center of St. Louis, surrounded by and adjacent to museums, performance venues, vibrant entertainment and dining districts, one of the nation's largest civic parks, and beautiful, tree-lined neighborhoods rich in history and diversity."[5] WUSTL seeks to "create an inclusive community that is welcoming, nurturing, and intellectually rigorous,"[6] where students "can be an individual and achieve exceptional things."[7] Defendant advertises the "best things in St. Louis are just steps from campus" where "the knowledge and resources of this city are yours for the taking."[8]

25.     WUSTL boasts an impressive faculty "deeply involved on campus and in the larger community."[9] The 7:1 student to faculty ratio and the "small, personalized nature allows for more

---

[4] https://www2.ed.gov/about/offices/list/ope/allocationsforsection18004a1ofcaresact.pdf.

[5] https://wustl.edu/about/campuses/.
[6] https://wustl.edu/about/mission-statement/.
[7] https://wustl.edu/.
[8] https://admissions.wustl.edu/life-at-washu/the-city-is-your-classroom/.
[9] https://wustl.edu/faculty-staff/.

hands-on opportunities to develop real-world skills" including "experiential learning and analytical rigor" for Olin Business School students.[10]

26.    The residential college experience is essential at WUSTL with "40 acres of undergraduate residential life space, there are 23 residential halls which make up our 10 residential colleges—all forming one single community."[11]

27.    All first-year students are required to live on campus in one of the 10 residential colleges in a part of campus called the "South 40." Defendant describes the South 40 as "its own small town, complete with a student government, dining facilities, a fitness center, a technology center, meeting rooms, intramural fields, basketball and sand volleyball courts, and more. A gift shop, a convenience store, a mailroom, and several student-run businesses are located there too."[12] Students living in the residential college community will "get to know others and become involved in numerous activities and organizations. You'll be encouraged and supported in your intellectual development and your relationships with others, including students, faculty, and staff."[13] Moreover, students have the opportunity to participate and lead community programing within their residential college "including large sporting events, outdoor music festivals, a formal dance, outings to St. Louis attractions, community service activities, and more." [14]

28.    Many upperclass students live in residential colleges each with "its own unique resources, activities, and traditions," [15] including open mic nights, resume advice over donuts, and a toast to graduating seniors on the terrace.[16] Further, Defendant notes that "[e]ach residential

---

[10] https://admissions.wustl.edu/academics/.
[11] https://admissions.wustl.edu/life-at-washu/.
[12] https://admissions.wustl.edu/life-at-washu/our-residential-colleges/.
[13] *Id.*
[14] https://admissions.wustl.edu/life-at-washu/our-residential-colleges/.
[15] https://admissions.wustl.edu/life-at-washu/.
[16] https://students.wustl.edu/northside-living-upperclass-students/.

-7-

college also has faculty, student, and staff members dedicated to helping you pursue your personal and educational goals." [17]

29.    As libraries and books are "are essential to your undergraduate education," WUSTL has 12 libraries that "put comfortable study and collaborative spaces within easy reach."[18]

30.    Additionally, WUSTL "offers hundreds of opportunities to try new things and enrich your college experience"[19] including more than 480 student organizations "where students can connect with people who have similar interests or explore a new path."[20]

31.    To obtain such educational opportunities and activities, Plaintiff and Class Members pay, in whole or in part, significant tuition, fees, and/or room and board.

**B.      Plaintiff Contracted With Defendant For On-Campus Classes**

32.    For the Spring 2020 semester, Plaintiffs contracted with WUSTL—and paid a premium—specifically for on-campus courses and programs.

33.    WUSTL's Spring 2020 course listings show that classes were offered in-person at specific locations on campus, such as the sample screenshot below showing Business School classes scheduled in Simon Hall [Exhibit A]:[21]

---

[17] https://admissions.wustl.edu/life-at-washu/our-residential-colleges/.
[18] https://admissions.wustl.edu/life-at-washu/student-services/.
[19] https://students.wustl.edu/student-involvement/.
[20] https://admissions.wustl.edu/life-at-washu/student-involvement/.
[21] https://courses.wustl.edu/Semester/Listing.aspx.



34.     Defendant's usual and customary practices when students register for on-campus courses and pay tuition for such courses is to provide on-campus instruction. Plaintiff's and Class Member's reasonable expectation when registering for classes for the Spring 2020 semester was that those classes would be provided on-campus, consistent with Defendant's usual and customary practice.

35.     Plaintiff and Class Members had the reasonable expectation that Defendant would provide the in-person educational experience and use of its facilities provided in Defendant's publications, including but not limited to, the course catalog, manuals, handbooks, bulletins, circulars, regulations, brochures, advertisements, and other promotional materials.

36.     The combination of the express terms of the course catalog, Defendant's publications and Defendant's usual and customary practice constituted an offer to any students attending WUSTL to register for on-campus classes. If accepted by Plaintiff and Class Members who did in fact register for such on-campus classes, in accordance with WUSTL's policies and

procedures and usual custom and practice, and who timely paid tuition for those on-campus classes, Defendant became contractually obligated to provide on-campus classes to Plaintiff and Class Members.

37.     Plaintiff selected WUSTL because of the networking and collaboration with professors and professionals offered through WUSTL's on-campus program. Plaintiff contracted with Defendant and agreed to pay the high cost of WUSTL's on-campus tuition because the program offered access to opportunities that were based on in-person classes and study.

38.     In light of the terms laid out in the course catalog, Defendant's publications, and Defendant's usual and customary practice, Plaintiff registered for on-campus courses for the Spring 2020 semester. Defendant accepted their registration as an on-campus student taking on-campus courses and charged Plaintiff the following for the Spring 2020 semester: $27,125.00 for tuition, approximately $6,474.00 for housing, between $3,319.50 and $2,194.50 for meal plan depending on the student's plan, $250.00 for a student health and wellness fee, and $271.00 for an undergraduate activities fee.

39.     Therefore, in-person instruction at WUSTL costs $27,125 per semester, or approximately $1,506–2,260 per credit.[22]

40.     Such charges for study are significantly higher than online only programs.

41.     For example, University College, WUSTL's professional and continuing education division, offers a fully online undergraduate Bachelor of Science in Integrated Studies program ranging from $665–895 per credit, far less expensive than an in-person course experience at

---

[22] *See* http://bulletin.wustl.edu/undergrad/tuition/ ("Full-time study is considered to be 12 to 18 units."). $27,125 divided by 18 and 12 units equals $1,506-2,260 per unit.

-10-

WUSTL.[23] Further, in a section titled "[i]s online learning for me?" WUSTL acknowledges "some students simply do not do their best in an online environment."[24]

42.     Other schools delivering an online-only educational experience assess significantly discounted rates for delivering such educational services. For example, Western Governor's University charges flat-rate tuition at $3,370 per term while Southern New Hampshire University charges $960 per course for online undergraduate programs and $1,881 per course for online graduate programs.

43.     Plaintiff and Class Members paid WUSTL tuition and fees for on-campus courses—and the benefits, services, opportunities, and facilities that came with them—for the Spring 2020 semester. In registering and paying WUSTL tuition and fees for the Spring 2020 semester, Plaintiff and Class Members understood, per the course catalog, WUSTL's publications, and WUSTL's usual and customary practice, that the classes they bargained and paid for would be administered on-campus for the duration of the semester, and that they would get a full semester's worth of access to on-campus facilities, services, and resources.

44.     However, as set forth further below, since March 11, 2020, Plaintiff has not been permitted to attend classes on-campus or had access to campus benefits.

**B.     The Novel Coronavirus Shutdowns And Defendant's Campus Closure**

45.     On December 31, 2019, governmental entities in Wuhan, China confirmed that health authorities were treating dozens of cases of a mysterious, pneumonia-like illness. Days later, researchers in China identified a new virus that had infected dozens of people in Asia, subsequently identified and referred to as the novel coronavirus, or COVID-19.

---

23 https://ucollege.wustl.edu/tuition-aid.

24 https://ucollege.wustl.edu/programs/online/is-online-for-me.

46.     By January 21, 2020, officials in the United States were confirming the first known domestic infections of COVID-19.

47.     Due to an influx of thousands of new cases in China, on January 30, 2020, the World Health Organization officially declared COVID-19 as a "public health emergency of international concern."

48.     By March 11, 2020, the World Health Organization declared COVID-19 a pandemic.

49.     Travel and assembly restrictions began domestically in the United States on March 16, 2020, with seven counties in the San Francisco, California area announcing shelter-in-place orders. Other states, counties, and municipalities have followed the shelter-in-place orders and as of April 6, 2020, 297 million people in at least 38 states, 48 counties, 14 cities, the District of Columbia, and Puerto Rico were being urged or directed to stay home.

50.     As it relates to this suit, on March 7, 2020 the first case of COVID-19 was identified in the state of Missouri.

51.     On March 13, 2020, Governor Michael L. Parson issued Executive Order 20-02 declaring a State of Emergency in Missouri due to COVID-19.[25]

52.     On March 21, 2020, St. Louis Health Commissioner Fredrick Echols and Mayor Lyda Krewson announced a "Stay at Home" order to reduce the spread of COVID-19 to the region starting on March 23, 2020.[26] On April 16, 2020, the St. Louis "Stay at Home" order was extended and would be re-evaluated in mid-May 2020.[27]

---

[25] https://www.sos.mo.gov/library/reference/orders/2020/eo2.

[26] https://www.stlouis-mo.gov/government/departments/health/communicable-disease/covid-19/documents/upload/Health-Commission-s-Order-5-03-21-2020.pdf.

[27] https://www.stlouis-mo.gov/government/departments/health/communicable-disease/covid-19/documents/upload/Health-Commissioner-s-Order-No-7.pdf.

53.     On April 3, 2020, Governor Parson and Director of the Department of Health and Senior Services Randall W. Williams, MD, FACOG, issued a "Stay Home-Missouri" order beginning on Monday April 6, 2020 until April 24, 2020.[28] On April 16, 2020, the order was extended through May 3, 2020.[29]

54.     On or about March 11, 2020, Washington University decided to migrate all, or substantially all, classes online to resume on March 23, 2020.

55.     On March 11, 2020, Chancellor Andrew D. Martin sent a message to the WUSTL community extending Spring Break and cancelling classes until March 23, 2020.[30] Beginning on March 23, all courses at the Danforth Campus and Medical Campus would be conducted online until at least April 30, 2020. Undergraduate students were instructed to complete the remainder of the Spring coursework off campus at their permanent home residences. Students remaining in undergraduate housing during Spring Break were required to leave university residence halls and university apartments for the rest of the Spring semester no later than March 15, 2020.

56.     On March 31, 2020, Marion G. Crain, Interim Provost & Executive Vice Chancellor for Academic Affairs, and Lori S. White, Vice Chancellor for Student Affairs, sent a message to students confirming there will be no in-person classes or exams for the remainder of the Spring 2020 semester. It was noted they were "working hard to finalize and process refunds related to residential life housing, dining, parking, and a partial refund of the student health fee" with more information to be provided in the future.[31]

57.     On April 1, 2020, Amy B. Kweskin, Vice Chancellor for Finance & Chief Financial Officer, and Robert M. Wild, Associate Vice Chancellor for Student Transition and Engagement

---

[28] https://governor.mo.gov/priorities/stay-home-order.
[29] https://governor.mo.gov/priorities/extension-stay-home-order-covid-19.
[30] https://emergency.wustl.edu/wp-content/uploads/2020/03/March-11-message-from-chancellor.pdf.
[31] https://emergency.wustl.edu/wp-content/uploads/2020/04/Students-Update-03-31-20.pdf.

& Dean of Students, sent a message to students and families confirming WUSTL would issue refunds on a prorated basis as of March 11, 2020 for housing, student parking fees, and a portion of the student health and wellness fee.[32] Meal plan balances and lost wages from work-study would be applied on a student-by-student basis.[33]

58.     Though the reasons for such closures are justified, the fact remains that such closures and cancellations present significant loss to Plaintiff and Class Members.

## C.    Defendants' Refusal To Issue Tuition, Fee, And Room And Board Refunds Constitutes A Breach of Contract

59.     Moving classes online barred students from the in-person courses and access to facilities bargained for and paid for by Plaintiff and Class Members and promised to be delivered by Defendant.

60.     Plaintiff and Class Members have been provided with an online substitute for the in-person coursework for which they contracted—and for which they paid.

61.     Yet despite providing students with only online educational experiences that are vastly different from what Plaintiff and Class Members contracted and paid for, WUSTL has refused to provide students with prorated reimbursements of tuition and fees.

62.     The remote, online learning classes offered to Spring 2020 students since March 2020 deprived students of in-person learning from their peers and school faculty. The move to these remote classes also deprived students of access to the facilities, materials, and opportunities only offered on WUSTL's physical campus, including laboratory and research experience, use of on campus facilities, such as the gym and libraries, and use of on-campus services and events such as sporting events, end-of-year programs, lectures, and various student services.

---

[32] https://families.wustl.edu/important-updates-2/.
[33] *Id.*

63.     The online classes Plaintiff and his peers received were not the in-person, campus experience that Plaintiff and other WUSTL students chose for their university education. The tuition and fees that Defendant charged were predicated on access to and constant interaction with and feedback from peers, mentors, professors, and guest lecturers; access to technology, libraries, and laboratories; opportunities to attend or participate in spectator sports and athletic programs; access to student government and health services; and participation in extracurricular groups and learning, among other things.

64.     College students across the country have offered apt descriptions of the loss they have experienced as a result of the pandemic, highlighting the disparity between students' bargained for educational experience and the experience that colleges and universities, including Defendant, now provide.

65.     For example, as reported in The Washington Post, one student "wonders why he and others . . . are not getting at least a partial tuition refund. Their education, as this school year ends in the shadow of a deadly pandemic, is nothing like the immersive academic and social experience students imagined when they enrolled. But tuition remains the same: $27,675 per semester . . . 'Our faculty are doing a good job of working with us,' said Patel, 22, who is from New Jersey. 'But at the end of the day, it's not the same as in-person learning. . . . It shouldn't just be a part of the business model where, no matter what happens, you have to pay the same amount. The cost needs to reflect some of the realities.'"[34]

66.     As another example, as reflected in a Change.org petition, with nearly 5,000 supporters, students at another major university highlight the loss experienced by students: "As a result of the COVID-19 global pandemic crisis, Governor Pritzker has declared a state of

---

[34] https://www.washingtonpost.com/education/2020/04/16/college-students-are-rebelling-against-full-tuition-after-classes-move-online/.

emergency in Illinois. In response, Northwestern University made the sensible decision to offer all Spring 2020 courses online for the start of the quarter and will likely extend this to the rest of the quarter as the situation worsens. While this is certainly the right call to ensure the health and safety of all students, Northwestern's tuition and fees do not accurately reflect the value lost by switching to online education for potentially an entire term. For the following reasons, we are seeking a partial refund of tuition and full refund of room and board for the Spring 2020 quarter. Since Northwestern is a top private university, the estimated annual cost of attendance of $78,654 goes towards a comprehensive academic experience that cannot be fully replicated online. Due to the COVID-19 crisis, students paying for the Northwestern experience will no longer have access to invaluable face-to-face interaction with faculty, resources necessary for specific programs, and access to facilities that enable learning."[35]

67.     Another university's student newspaper reflects another example: "At this time, most of the campus and dorms need not be rigorously maintained. No events will be held, nor speakers hosted. The world-class education that consists in having opportunities to work and interact with academics and peers (not to mention the vast numbers of innovators, creators, doctors, organizers, and more that congregate on our campus) will no longer be provided."[36]

68.     WUSTL students agree with these efforts. Over 1,600 WUSTL students have signed a Change.org petition requesting WUSTL provide refunds to students including tuition and fees, noting the following:

> As you may know, the WUSTL community is highly influenced by the outbreak of COVID-19 in America. As the courses of Washington University in St. Louis are shifted to the online form that is a less expensive and less effective way of teaching and learning than in-class form, the benefits that students would have enjoyed such as classroom facilities, gyms, and library are

---

[35] https://www.change.org/p/northwestern-university-tuition-fees-reduction-for-spring-2020.
[36] https://www.chicagomaroon.com/article/2020/3/19/uchicago-lower-tuition-spring-2020/.

remarkably jeopardized. In more detail, students may find it hard to communicate with their professors and classmates, to hold face-to-face group discussions, to avoid mental health problems due to staying at home, and most importantly to enjoy the facilities and utilities of the university. Moreover, taking Olin Business School as an example, the classes initially scheduled for Spring 2020 Mini-B was six weeks, but now Olin has shortened the classes to only five weeks. Besides, the commencement has been canceled, and this decision impaired the interest of most students who are ready to graduate in May 2020. We need to note that the tuition should and must cover all these facilities, classes, utilities, etc. However, students are currently unable to fully benefit from what their tuition covered. As a result, students should be compensated through a partial tuition refund. We, the students of WUSTL, ask the university to refund $10000 to each student. Also, we do expect a communication concerning these issues.[37]

69.     And as reported in the independent newspaper of WUSTL, "over a month has passed since we were allowed on campus, and in the middle of week four of online classes, it's time to accept another fact: Online classes are not a sufficient replacement for in-person classes."[38] The author highlights the struggles of remote learning from home noting: "[t]he only structure I had was found in meetings and in-person deadlines. The lack of these has only proven just how valuable they were to my overall academic success."[39]

70.     Even the professors agree students have suffered a loss with the transition to online classes. The Washington Post printed a WUSTL professor's reflections on the school's culture of in-person education and issues students are facing with the switch to online classes:

> "After all, Washington University's strength lay in the close connection that occurred in the classroom and on campus. We were committed to the notion that every student would 'be known by name and story,' and most of us believed that we could do so best through direct contact in the classroom and face-to-face meetings with students outside of class . . . Washington University had

---

[37] https://www.change.org/p/andrew-d-martin-partial-refund-for-wustl-spring-2020-tuition.
[38] Kya Vaughn, *The Verdict is in: Online Class is Truly Not the Same*, Student Life, Apr. 15, 2020, https://www.studlife.com/forum/2020/04/15/the-verdict-is-in-online-class-is-truly-not-the-same/.
[39] *Id.*

remained committed to the principal that students—especially undergraduates—would be taught in person.

\*\*\*

. . . the real question is how students will experience the transformation in their classes. They are struggling with the sudden challenge of watching online lectures. Meanwhile, they're craving some semblance of the direct interpersonal interaction that brought them to Washington University in the first place. They had already rejected online education when they chose a traditional campus experience like ours.

. . . With only a week to prepare, and working in a culture founded on direct engagement with students, faculty members cannot produce the sort of elaborate systems that are the hallmark of the best examples of online education.

Instead, faculty members will spend the rest of the semester teaching online without truly becoming online educators."[40]

71.     Given Defendant's transition to online classes and COVID-19 concerns, Defendant asked students to vacate student housing.

72.     Acknowledging, as a result, WUSTL students would not get what they bargained for in contracting for on-campus housing and meal plans Defendant has agreed to prorate for housing, student parking fees, and a portion of the student health and wellness fee expenses when a student leaves campus at the university's instruction. However, Defendant decided to issue refunds for meal plan balances and lost wages from work-study on a student-by-student basis, and not all students received fair prorated refunds.[41]

73.     However, despite the fact that WUSTL students also would not get what they had bargained for in contracting for on-campus courses, opportunities, facilities, and resources,

---

[40] https://www.washingtonpost.com/education/2020/04/04/these-washington-university-faculty-had-rejected-online-classes-until-coronavirus-heres-how-they-made-switch/.
[41] https://www.studlife.com/news/2020/04/23/residential-life-not-in-a-financial-position-to-provide-prorated-refunds-for-residential-advisors-seeking-compensation-for-lost-wages/.

Defendant has refused to refund Plaintiff and Class Members any of the tuition they had paid for the Spring 2020 semester.

74.     While WUSTL has agreed to refund student accounts with a calculated amount of unused housing and other fees, Defendant has explicitly refused to issue tuition refunds with the shift to remote learning, declaring as follows: "[b]ecause students will be completing their academic coursework online and receiving credit toward their degree programs, tuition will not be reimbursed. . . . Students will continue to receive academic instruction from the same faculty members, albeit in a modified environment, for academic credit, and we will continue to provide academic support services and resources remotely."[42]

75.     However, such justifications directly contradict the experience of Plaintiff and Class Members.

76.     Defendants do so notwithstanding the fact WUSTL received $22.4 million in federal stimulus aid under the CARES Act.

## V.     CLASS ACTION ALLEGATIONS

77.     Plaintiff sues under Rule 23(a), (b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and a Class defined as follows:

> All persons enrolled at Defendant for the Spring 2020 term who paid Defendant, in whole or in part, tuition, fees, and/or room and board for in-person instruction and use of campus facilities, but were denied use of and/or access to in-person instruction and/or campus facilities by Defendant.

Excluded from the Class is Defendant, any entity in which Defendant has a controlling interest, and Defendant's legal representatives, predecessors, successors, assigns, and employees. Further excluded from the Class is this Court and its employees. Plaintiff reserves the right to modify or

---

[42] https://emergency.wustl.edu/coronavirus-disease-covid-19/covid-19-faqs/housing/.

amend the Class definition including through the creation of sub-classes if necessary, as appropriate, during this litigation.

78.     The definition of the Class is unambiguous. Plaintiff is a member of the Class Plaintiff seeks to represent. Class Members can be notified of the class action through contact information and/or address lists maintained in the usual course of business by Defendant.

79.     Per Rule 23(a)(1), Class Members are so numerous and geographically dispersed that their individual joinder of all Class Members is impracticable. The precise number of Class Members is unknown to Plaintiff but may be ascertained from Defendant's records. However, given the thousands of students enrolled at Defendant in a given year, that number greatly exceeds the number to make joinder possible. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

80.     Defendant has acted or refused to act on grounds generally applicable to Plaintiff and Class Members, making appropriate final injunctive relief and declaratory relief regarding the Class under Rule 23(b)(2).

81.     Consistent with Rule 23(a)(2), Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Class Members. Similar or identical legal violations are involved. Individual questions pale by comparison to the numerous common questions that predominate. The injuries sustained by Class Members flow, in each instance, from a common nucleus of operative facts—Defendant's campus closure and student evictions, its complete transition to online classes, and Defendant's refusal to fully refund tuition, fees, and/or room and board.

82.    Additionally, common questions of law and fact predominate over the questions affecting only individual Class Members under Rule 23(a)(2) and Rule 23(b)(3). Some of the common legal and factual questions include:

a.    Whether Defendant engaged in the conduct alleged;

b.    Whether Defendant has a policy and/or procedure of denying refunds, in whole or in part, to Plaintiff and Class Members;

c.    Whether Defendant breached identical contracts with Plaintiff and Class Members;

d.    Whether Defendant violated the common law of unjust enrichment;

e.    Whether Defendant converted Plaintiff and Class Members refunds and/or rights to refunds; and

f.    The nature and extent of damages and other remedies to which the conduct of Defendant entitles Class Members.

83.    The Class Members have been damaged by Defendant through its practice of denying refunds to Class Members.

84.    Plaintiff's claims are typical of the claims of the other Class Members under Rule 23(a)(3). Plaintiff was a student enrolled at Defendant for the Spring 2020 term. Like other Class Members, Plaintiff was instructed to leave Defendant's campus, forced to take online classes, and has been completely or partially denied a refund for tuition, fees, and/or room and board.

85.    Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class as required by Rule 23(a)(4). Plaintiff is familiar with the basic facts that form the bases of the Class Members' claims. Plaintiff's interests do not conflict with the interests of the other Class Members he seeks to represent. Plaintiff has retained counsel competent and experienced in

class action litigation and intends to prosecute this action vigorously. Plaintiff's counsel has successfully prosecuted complex class actions, including consumer protection class actions. Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of Class Members.

86.     The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and Class Members under Rule 23(b)(3). The relief sought per individual members of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendant. It would be virtually impossible for Class Members to seek redress individually. Even if the Class Members themselves could afford such individual litigation, the court system could not.

87.     In addition, under Rule 23(b)(3)(A), individual litigation of the legal and factual issues raised by the conduct of Defendant would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

88.     Under Rule 23(b)(3)(C), it is desirable to concentrate the litigation of the claims of Plaintiff and Class Members in this forum given that Defendant is located within this judicial district and discovery of relevant evidence will occur within this district.

89.     Given the similar nature of Class Members' claims and the absence of material differences in the state statutes and common laws upon which Class Members' claims are based, a nationwide Class will be easily managed by the Court and the parties per Rule 23(b)(3)(D).

010920-20/1332958 V1

## VI. CAUSES OF ACTION

## COUNT I

## BREACH OF CONTRACT

90.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

91.     Plaintiff and Class Members entered into identical, binding contracts with Defendant by accepting Defendant's offer to register for on-campus classes in accordance with the terms of Defendant's publications, course catalog, bulletins, policies, procedures, advertisements, and Defendant's usual and customary practice of providing on-campus courses.

92.     It was the reasonable expectation of Plaintiff and Class Members that Defendant would provide on-campus—as opposed to online—classes and instruction, and use of Defendant's facilities as mutually agreed in accordance with Defendant's usual and customary practice of providing on-campus courses, and as provided in Defendant's publications, including but not limited to, the course catalog, bulletins, policies, procedures, brochures, advertisements, and other promotional materials.

93.     Under their contracts with Defendant, a mutual obligation arose from the agreement, where Plaintiff and Class Members registered for on-campus courses and paid Defendant tuition, fees, and/or room and board charges for Defendant to provide in-person instruction, access to Defendant's facilities, and/or housing services.

94.     A material term of the bargain and contractual relationship, whether express or implied, was that Defendant would provide on-campus courses and access to on-campus facilities and services. Plaintiff and Class Members have fulfilled all requirements of their mutually agreed contracts, having followed the Defendant's policies, procedures, and requirements for registering

-23-

and paying for on-campus courses and access to on-campus facilities and services. Plaintiff and Class Members have paid Defendant for all Spring 2020 term financial assessments.

95.     However, Defendant has breached such contracts, failed to provide those on-campus classes and/or services, and has not otherwise performed as obligated and required by the contracts between Plaintiff and Class Members and Defendant. Defendant moved all classes to online classes, restricted or eliminated Class Members' ability to access university facilities, and/or evicted Plaintiff and Class Members from campus housing. In doing so, Defendant has deprived and continues to deprive Plaintiff and Class Members from the benefit of their bargains with Defendant.

96.     Plaintiff and Class Members have been damaged as a direct and proximate result of Defendant's breach. The online classes provided by Defendant are objectively different from—and less valuable than—the on-campus classes for which the parties contracted.

97.     Plaintiff and Class Members are entitled to damages, including but not limited to tuition refunds, fee refunds, and/or room and board refunds.

## COUNT II

## BREACH OF IMPLIED CONTRACT

98.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

99.     Plaintiff pleads this Count in the alternative to Count I.

100.     Plaintiff and Class Members entered into an implied contract by accepting Defendant's offer to register for on-campus classes and use of Defendant's facilities in accordance with Defendant's usual and customary practice of providing on-campus courses.

101.     Under the implied contract, Plaintiff and Class Members registered for on-campus courses.

102.     It was the reasonable expectation of Plaintiff and Class Members that Defendant would provide them with on-campus—as opposed to online—classes and instruction and use of Defendant's facilities as mutually agreed and intended in accordance with Defendant's publications including, the course catalog, brochures, advertisements, and other promotional materials and Defendant's usual and customary practice of providing on-campus courses.

103.     A meeting of the minds occurred regarding the essential terms that Defendant would provide on-campus courses and access to on-campus facilities and services in exchange for Plaintiff and Class Members registering for on-campus courses and paying Defendant tuition, fees, and/or room and board charges.

104.     Plaintiff and Class Members have fulfilled all expectations of their mutual agreement, by registering and paying for on-campus courses and access to on-campus facilities and services for the Spring 2020 semester. Plaintiff and Class Members have paid Defendant for all Spring 2020 semester financial assessments.

105.     However, Defendant breached the implied contract, failed to provide those on-campus classes and/or services, and has not otherwise performed as obligated and required by the implied contract between Plaintiff and Class Members and Defendant. Defendant moved all classes to online classes, restricted or eliminated Class Members' ability to access university facilities, and/or evicted Plaintiff and Class Members from campus housing. In doing so, Defendant has deprived and continues to deprive Plaintiff and Class Members from the benefit of their bargains with Defendant.

106.     Plaintiff and Class Members have been damaged as a direct and proximate result of Defendant's breach.

107.    Plaintiff and Class Members are entitled to damages, including but not limited to, tuition refunds, fee refunds, and/or room and board refunds.

## COUNT III

## UNJUST ENRICHMENT

108.    Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

109.    Plaintiff pleads this Count in the alternative to Counts I and II.

110.    To the extent Defendant contends that the course catalog, bulletin, policies, procedures, brochures, advertisements, and other promotional materials permit it to unilaterally and without notice change the terms under which Plaintiff and Class Members were to receive instruction, from on-campus to online, the promises made by Defendant to Plaintiff and Class Members to provide on-campus instruction were illusory and no contract exists between the parties.

111.    At all times relevant hereto, Plaintiff and Class Members directly conferred non-gratuitous benefits upon Defendant, *i.e.*, monetary payments for tuition, fees, and/or room and board, so that Plaintiff and Class Members could avail themselves of in-person educational opportunities and utilize campus facilities, including campus dormitories.

112.    Defendant appreciated or knew of the non-gratuitous benefits conferred upon it by Plaintiff and Class Members.

113.    Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiff and Class Members, with full knowledge and awareness it would be unjust and inequitable to retain the benefit provided by Plaintiff and Class Members for in-person instruction, access to Defendant's facilities and housing services under the circumstances because Defendant moved all

classes online, restricted or eliminated Plaintiff's and Class Members' ability to access university facilities, and/or evicted Plaintiff and Class Members from campus housing.

114.   Due to Defendant's unjust and inequitable actions, Plaintiff and Class Members are entitled to refunds for tuition, fees, and/or room and board.

115.   Defendant knew Plaintiff enrolled at WUSTL and paid Defendant non-gratuitous benefits for an in-person academic experience, including in-person classes, opportunities to network with students and professors in-person, access to campus buildings and dormitories, and to avail themselves of school programs and events.

116.   However, Defendant provided Plaintiff and Class Members an online-only experience, online-only classes presented by Google or Zoom, void of face-to-face faculty and peer interaction, separated from program resources, and barred from facilities vital to study.

117.   Although Defendant sent students home, closed its residence halls, and offered an online-only experience, Defendant knowingly, inequitably, and unjustly chose to retain and profit from the non-gratuitous benefit of millions of dollars from students and parents in the form of tuition, fees, and/or room and board payments as if nothing had changed.

118.   Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiff and Class Members under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable.

119.   Because Defendant's retention of the non-gratuitous benefits conferred by Plaintiff and Class Members is unjust and inequitable, Plaintiff and Class Members are entitled to, and seek disgorgement and restitution of, the benefits unjustly retained, whether in whole or in part, including through refunds for tuition, fees, and/or room and board.

**COUNT IV**

**CONVERSION**

120.    Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

121.    Plaintiff and Class Members have an undisputed ownership interest in their right to receive educational services, activities, and access to Defendant's facilities for the Spring 2020 term. Plaintiff and Class Members obtained such rights by paying Defendant tuition, fees, and/or room and board and by otherwise remaining in good standing with Defendant.

122.    Defendant wrongfully exercised control over and/or intentionally interfered with the rights of Plaintiff and Class Members by effectively closing its campus to in-person education and switching to an online-only format, discontinuing paid-for services, and evicting students from campus housing. All the while, Defendant has unlawfully retained the monies Plaintiff and Class Members paid Defendant as well as barred Plaintiff and Class Members from Defendant's facilities.

123.    Defendant deprived Plaintiff and the other Class Members of the rights and benefits for which they paid Defendant tuition, fees, and/or room and board including access to the University's campus and in-person educational services, and access to its classrooms, libraries, student centers, dining halls, and dorms.

124.    Plaintiff and/or Class Members have requested and/or demanded that Defendant issue refunds.

125.    Defendant's interference with the rights and services for which Plaintiff and Class Members paid damaged Plaintiff and Class Members, in that they paid for rights, benefits, services, and/or facility access, but Defendant has deprived Plaintiff and Class Members of their rights, benefits, services, and/or facility access.

010920-20/1332958 V1

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and Class Members request that the Court enter an order or judgment against Defendant including:

a.      Certification of the action as a Class Action under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, and appointment of Plaintiff as Class Representative and his counsel of record as Class Counsel;

b.      Damages in the amount of unrefunded tuition, fees, and/or room and board;

c.      Actual damages and all such other relief as provided under the law;

d.      Pre-judgment and post-judgment interest on such monetary relief;

e.      Other appropriate injunctive relief as permitted by law or equity, including an order enjoining Defendant from retaining refunds for tuition, fees, and/or room and board;

f.      The costs of bringing this suit, including reasonable attorney's fees; and

g.      All other relief to which Plaintiff and Class Members may be entitled by law or in equity.

## JURY DEMAND

Plaintiff demands trial by jury on his own behalf and on behalf of Class Members.

Respectfully submitted,

NIEMEYER, GREBEL & KRUSE, LLC

By:     */s/ David L. Grebel*
        David L. Grebel        #52683MO
        Michael S. Kruse,      #57818MO
        211 N. Broadway, Suite 2950
        St. Louis, MO  63102
        314-241-1919 phone
        314-665-3017 fax
        grebel@ngklawfirm.com
        kruse@ngklawfirm.com

-29-

Steve W. Berman (12536 (WA)) (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292
steve@hbsslaw.com

Daniel J. Kurowski (6286656 (IL)) (*Pro Hac Vice*)
Whitney K. Siehl (6313995 (IL)) (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
(708) 628-4949
dank@hbsslaw.com
whitneys@hbsslaw.com

*Attorneys for Plaintiff, individually and on behalf of
all others similarly situated*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed and served on all attorneys of record by way of the Court's CM/ECF filing system on this 10th day of August 2020.


*/s/ David L. Grebel*

010920-20/1332958 V1