**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| ALEXANDER RAIMO, individually and on behalf of all others similarly situated,<br><br>                     Plaintiff,<br><br>   v.<br><br>WASHINGTON UNIVERSITY IN ST. LOUIS,<br><br>                Defendant. | No. 4:20-cv-00634-SEP<br><br><u>JURY TRIAL DEMANDED</u> |

<u>**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**</u>

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................2

I.       Plaintiff Satisfies the Legal Standard on a Motion to Dismiss. ..............................2

II.      Plaintiff Does Not Bring an Educational Malpractice Claim. ..................................2

III.     Plaintiff Alleges Breach of a Specific Promise for In-Person Education. ..................................................................................................................5

IV.     Plaintiff Adequately Alleges the University's Unjust Enrichment Based on its Inequitable Retention of Money Plaintiff Paid for In-Person Education. ................................................................................................11

V.      Plaintiff Adequately Alleges a Conversion Claim Based on the University's Deprivation of Plaintiff's Right to the In-Person Education He Purchased. ......................................................................................13

CONCLUSION.....................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alsides v. Brown Inst. Ltd.*,
    592 N.W.2d 468 (Minn. Ct. App. 1999) .......................................................................3, 5, 8

*Anderson v. Bass Pro Outdoor World*,
    355 F. Supp. 3d 830 (W.D. Mo. 2018) ...................................................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................................................2

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2017)...................................................................................................................2

*Blake v. Career Educ. Corp.*,
    No. 4:08CV00821ERW, 2009 WL 2567011 (E.D. Mo. Aug. 18, 2009) ..............................2, 4

*Breece v. Jett*,
    556 S.W.2d 696 (Mo. Ct. App. 1977).............................................................................13, 15

*Buxton v. Harsh*,
    631 S.W.2d 95 (Mo. Ct. App. 1982).....................................................................................10

*CenCor, Inc. v. Tolman*,
    868 P.2d 396 (Colo. 1994)........................................................................................................8

*Cent. Am. Health Scis. Univ., Belize Med. Coll. v. Norouzian*,
    236 S.W.3d 69 (Mo. Ct. App. 2007)........................................................................................5

*Cole v. Control Data Corp.*,
    947 F.2d 313 (8th Cir. 1991) ...........................................................................................13, 14

*Cross v. Univ. of Toledo*,
    No. 2020-00274-JD, 2020 WL 4726814 (Ohio Ct. Cl. Jul. 8, 2020) ............................ *passim*

*Dallas Airmotive, Inc. v. Flightsafety Int'l, Inc.*,
    277 S.W.3d 696 (Mo. Ct. App. 2008).......................................................................................2

*Fehrman v. Pfetzing*,
    917 S.W.2d 600 (Mo. Ct. App. 1996).....................................................................................14

*Frey v. City of Herculaneum*,
    44 F.3d 667 (8th Cir. 1995) ....................................................................................................15

*Guidry v. Our Lady of the Lake Nurse Anesthesia Program Through Our Lady of the Lake Coll.*,
  170 So. 3d 209 (La. App. 1 Cir. 2015) ...................................................................5

*Hawkins v. Nestle U.S.A. Inc.*,
  309 F. Supp. 3d 696 (E.D. Mo. 2018)..................................................................11

*Hertz Corp. v. RAKS Hosp., Inc.*,
  196 S.W.3d 536 (Mo. Ct. App. 2006)..................................................................11

*Hope Acad. v. Friel*,
  No. CV030081183S, 2004 WL 1888909 (Conn. Super. Ct. July 22, 2004)...........................5

*J & J Sports Prods., Inc. v. Garcia*,
  No. 4:13 CV 2416 DDN, 2014 WL 2644194 (E.D. Mo. June 13, 2014) ...............................13

*Jennings v. SSM Health Care St. Louis*,
  355 S.W.3d 526 (Mo. Ct. App. 2011)...................................................................11

*Kashmiri v. Regents of Univ. of Cal.*,
  156 Cal. App. 4th 809 (2007) ................................................................................5

*Knapp v. Hanson*,
  183 F.3d 786 (8th Cir. 1999) .............................................................................2, 3

*Leisman v. Archway Med., Inc.*,
  53 F. Supp. 3d 1144 (E.D. Mo. 2014)...................................................................12

*Lucero v. Curators of Univ. of Missouri*,
  400 S.W.3d 1 (Mo. Ct. App. 2013)............................................................... *passim*

*Manzer v. Sanchez*,
  985 S.W.2d 936 (Mo. Ct. App. 1999).....................................................................13

*McClean v. Duke Univ.*,
  376 F. Supp. 3d 585 (M.D.N.C. 2019) ...................................................................4

*McDermott v. Ohio State University*,
  No. 2020-00286JD, 2020 WL 5239892 (Ohio Ct. Cl. Aug. 24, 2020)........................... *passim*

*Mellowitz v. Ball State University*,
  No. 49D14-2005-PL-015026 (Ind. Super. Ct., Marion Cty. Aug. 14, 2020)...........................2

*Milanov v. Univ. of Michigan*,
  No. 20-000054-MK, 2020 Mich. Ct. Cl. LEXIS 1
  (Mich. Ct. Cl. Jul. 27, 2020) ....................................................................... *passim*

*Moss v. Wayne State Univ.*,
  No. 286034, 2009 WL 4344193 (Mich. Ct. App. Dec. 1, 2009) ...........................................12

*Nickel v. Stephens Coll.*,
  480 S.W.3d 390 (Mo. Ct. App. 2015).........................................................................................9

*Paynter v. New York Univ.*,
  319 N.Y.S.2d 893 (N.Y. App. Term 1971)..............................................................................4, 5

*Rental Co., LLC v. Carter Grp., Inc.*,
  399 S.W.3d 63 (Mo. Ct. App. 2013).........................................................................................11

*Reynolds v. Sterling College, Inc.*,
  170 Vt. 620 (2000)........................................................................................................................5

*Robbe v. Webster Univ.*,
  98 F. Supp. 3d 1030 (E.D. Mo. 2015).............................................................................. *passim*

*Roe v. St. Louis Univ.*,
  No. 4:08CV1474 HEA, 2012 WL 6757558 (E.D. Mo. Dec. 31, 2012)....................................4

*Ryan v. Univ. of N.C. Hosps.*,
  494 S.E.2d 789 (N.C. Ct. App. 1998) ....................................................................................4, 8

*Soueidan v. St. Louis Univ.*,
  926 F.3d 1029 (8th Cir. 2019) ....................................................................................................4

*Weicht v. Suburban Newspapers of Greater St. Louis, Inc.*,
  32 S.W.3d 592 (Mo. Ct. App. 2000).............................................................................13, 14, 15

*Weisman v. Barnes Jewish Hosp.*,
  No. 4:19-CV-00075-JAR, 2020 WL 2800469 (E.D. Mo. May 29, 2020)......................3, 9, 15

*Zumbrun v. Univ. of S. California*,
  25 Cal. App. 3d 1 (1972) .............................................................................................................8

## OTHER AUTHORITIES

Fed. R. Civ. P. 8(a)(2)..........................................................................................................................2

**INTRODUCTION**

Many parents save throughout their children's lives to send them off to college. Higher education is often one of the biggest investments that a family makes. But despite the growing industry of less-expensive online programs, many students and their families continue to pay more for an on-campus education. The reason: it is on campus where students receive an immersive educational experience involving live, in-person instruction that is enriched through social interaction with faculty and other students and facilitated by access to campus resources.

Plaintiff and class members are students who applied for and accepted offers of enrollment for an in-person education at Washington University in St. Louis (the University). The University offers less expensive online programs. But Plaintiff and class members paid more to experience the University's campus and in-person educational services, including in its lecture halls, laboratories, libraries, student centers, dining halls, and dorms. In response to COVID-19, however, the University switched to distance learning mid-way through the Spring semester. While this was an understandable response to the pandemic, the University's failure to reimburse students for the tuition differential between in-person and online learning was not. And it amounts to breach of contract, unjust enrichment, and conversion.

Defendant argues that the claims are foreclosed by the educational malpractice doctrine. But a breach of contract occurs where an educational institution has failed to provide a specifically promised service—such as in-person education—because the relevant inquiry is whether the service was provided at all, not whether it was adequate or appropriate. Moreover, Plaintiff adequately alleges the University's unjust enrichment based on its inequitable retention of the tuition and fees that students paid for in-person education. And a conversion claim exists based on the ownership right to in-person education paid for by Plaintiffs and class members.

Indeed, four separate courts analyzing nearly identical claims against educational institutions in the wake of COVID-19 have each denied motions to dismiss claims for unjust enrichment and breach of contract to provide live, in-person instruction and access to campus facilities. *See Cross v. Univ. of Toledo*, No. 2020-00274-JD, 2020 WL 4726814 (Ohio Ct. Cl.

- 1 -

Jul. 8, 2020); *Milanov v. Univ. of Michigan*, No. 20-000054-MK, 2020 Mich. Ct. Cl. LEXIS 1 (Mich. Ct. Cl. Jul. 27, 2020); *McDermott v. Ohio State University*, No. 2020-00286JD, 2020 WL 5239892 (Ohio Ct. Cl. Aug. 24, 2020); *Mellowitz v. Ball State University*, No. 49D14-2005-PL-015026 (Ind. Super. Ct., Marion Cty. Aug. 14, 2020) (Ex. 1).[1] This Court should do the same.

## ARGUMENT

## I.     Plaintiff satisfies the legal standard on a motion to dismiss.

Rule 8(a)(2) "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests."[2] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[3] The court "must take all of the factual allegations in the complaint as true."[4] And the court "must construe the allegations in the complaint and reasonable inferences arising from the complaint favorably to the plaintiffs."[5] Plaintiff satisfies these standards.

## II.    Plaintiff does not bring an educational malpractice claim.

As the district court explained in *Blake v. Career Educ. Corp.*, in "educational malpractice cases, a plaintiff sues his or her academic institution for *tortiously* failing to provide adequate educational services."[6] "Missouri, along with most other jurisdictions that have considered the issue, has found that educational malpractice claims are not cognizable because there is no duty."[7] But "courts have recognized claims by students for breach of contract, fraud,

---

[1] Internal citations and quotations omitted and emphasis added unless otherwise indicated.

[2] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2017).

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Id.*

[5] *Knapp v. Hanson*, 183 F.3d 786, 788 (8th Cir. 1999).

[6] No. 4:08CV00821ERW, 2009 WL 2567011, at *2 (E.D. Mo. Aug. 18, 2009) (quoting *Dallas Airmotive, Inc. v. Flightsafety Int'l, Inc.*, 277 S.W.3d 696, 700 (Mo. Ct. App. 2008)) (emphasis in original).

[7] *Id.*

or other intentional wrongdoing that allege a private or public educational institution has failed to provide *specifically promised educational services.*"[8]

In *Blake*, the student plaintiffs alleged that the defendant college "falsely represented that students would participate in hands-on training."[9] The defendant argued—as the University does here—that the claim should be dismissed under the educational malpractice doctrine. But the court disagreed. Because the "relevant inquiry would be whether hands-on training was provided at all, not whether it was adequate or appropriate," it would "not be necessary to inquire into the nuances of educational processes and theories."[10] So too here. Plaintiff is not asking the Court to evaluate the quality of education at the University, but assess whether the promised in-person classes were provided at all.[11] And the Court should decline the University's invitation to restate Plaintiff's claims.[12] *Cross*, 2020 WL 4726814, at *3 (rejecting the defendant's argument that the claims actually amounted to "educational malpractice" concerning the quality of education, because a "court's role" generally does not include "recasting a party's pleading").

Indeed, four separate courts analyzing nearly identical claims against colleges and universities in the wake of COVID-19 have each held that claims for failure to provide in-person instruction and access to campus facilities and resources did *not* constitute claims for educational malpractice. *See, e.g.*, *Milanov*, 2020 Mich. Ct. Cl. LEXIS 1, at *7–9; *Cross*, 2020 WL 4726814, at *2–3 (same); *McDermott*, 2020 WL 5239892 (same); *see also Alsides v. Brown Inst. Ltd.*, 592

---

[8] *Id.* (emphasis in original).

[9] *Id.*

[10] *Id. See also Robbe v. Webster Univ.*, 98 F. Supp. 3d 1030, 1037 (E.D. Mo. 2015) (denying motion to dismiss breach of contract claim because failure to permit the student plaintiff to defend her thesis after establishing a thesis defense date "challenge[d] Defendant's failure to provide the promised service, not its quality"); *Weisman v. Barnes Jewish Hosp.*, No. 4:19-CV-00075-JAR, 2020 WL 2800469, at *5 (E.D. Mo. May 29, 2020) ("Plaintiff alleges that his negative performance evaluations contained objectively false information. As such, the truth of those allegations may be tested without inquiring into the nuances of educational processes and theories as to how to define and quantify a resident's competency.").

[11] ¶¶ 11–15, 32–44.

[12] *See, e.g.*, Mot. at 4 ("*In other words*, Plaintiff asks the Court to determine whether and how the quality of the education the University provided fell short . . . .").

N.W.2d 468, 474 n.3 (Minn. Ct. App. 1999) (breach of contract claim based on failure to provide promised hands-on training would not involve an inquiry into the nuances of educational processes and theories); *Ryan v. Univ. of N.C. Hosps.*, 494 S.E.2d 789, 791 (N.C. Ct. App. 1998) (breach of contract claim based on "failure to provide a one month rotation in gynecology" as promised "would not involve an inquiry into the nuances of educational processes and theories").[13]

Defendant's cases arising in the context of decision-making about a student's academic performance or conduct are inapposite.[14] As explained in *Blake*, such cases involve "inherent uncertainties about causation and the nature of damages in light of such intervening factors as a student's attitude."[15] But here damages arise from the failure to provide the promised in-person education and are objectively quantifiable based on the University's own tuition differential for in-person and online education.[16] So Plaintiff is not asking the Court to determine whether "the quality and value of his education was diminished" in some "undefined" amount,[17] but to find that the promised in-person education was not provided at all based on historical fact, and to value that breach based on the University's own tuition fee schedule.

Lastly, in *McClean v. Duke Univ.*, the plaintiff "identified no specific promise related to counselling or any other gender violence support services."[18] And in *Paynter v. New York Univ.*,

---

[13] *Cf. Roe v. St. Louis Univ.*, No. 4:08CV1474 HEA, 2012 WL 6757558, at *10–11 (E.D. Mo. Dec. 31, 2012) (whether medical care was from "top specialists" and physical training program was "state of the art" was nuance about quality inappropriate for court). *See* Mot. at 6–7.

[14] *Lucero v. Curators of Univ. of Missouri*, 400 S.W.3d 1 (Mo. Ct. App. 2013) (plaintiff law student who violated the defendant law school's honor code several times brought a breach of contract claim based on the law school's alleged failure to properly handle his grievance against his professor); *Soueidan v. St. Louis Univ.*, 926 F.3d 1029 (8th Cir. 2019) (plaintiff Ph.D. student, who was unprepared in practice examinations and did not follow guidelines for writing his paper, brought a breach of contract claim against the defendant university for failure to obtain his degree).

[15] 2009 WL 2567011, at *4.

[16] ¶¶ 38, 41.

[17] Mot. at 4.

[18] 376 F. Supp. 3d 585, 607 (M.D.N.C. 2019).

- 4 -

the parent of a student brought a breach of contract claim "because classes were suspended on May 7, 1970" following anti-war demonstrations.[19] But the court regarded the late-in-term suspension of classes to be a "minor" and "insubstantial change" in the schedule of classes.[20] The cancelation of in-person classes on March 11, 2020, on the other hand, was a complete upheaval for students mid-way through their Spring semester.[21]

## III.    Plaintiff alleges breach of a specific promise for in-person education.

"It is generally held across the jurisdictions of the United States that the basic legal relation between a student and a private university or college is contractual in nature."[22] "The terms of the contract are rarely delineated; however, it is generally accepted that the catalogs, bulletins, circulars, and regulations of the university made available to the student become part of the contract."[23] As the district court for the Eastern District of Missouri stated in *Robbe v. Webster Univ.*, "[t]o make a submissible case for breach of contract claim, a plaintiff must allege and prove: (1) a mutual agreement between parties capable of contracting; (2) mutual obligations arising out of the agreement; (3) valid consideration; (4) part performance by one party; and (5) damages resulting from the breach of contract."[24]

---

[19] 319 N.Y.S.2d 893, 893 (N.Y. App. Term 1971).

[20] *Id.* at 894.

[21] ¶ 54.

[22] *Guidry v. Our Lady of the Lake Nurse Anesthesia Program Through Our Lady of the Lake Coll.*, 170 So. 3d 209, 213 (La. App. 1 Cir. 2015); *see also Alsides*, 592 N.W.2d at 472 ("the basic relationship between a student and an educational institution is contractual in nature").

[23] *Guidry*, 170 So. 3d at 2013; *see also Alsides*, 592 N.W.2d at 472; *Hope Acad. v. Friel*, No. CV030081183S, 2004 WL 1888909, at *3 n.4 (Conn. Super. Ct. July 22, 2004) ("Express and implied promises in documents such as catalogues, bulletins, handbooks and the like, concerning core matters of an educational program have been found to be part of an educational contract."); *Kashmiri v. Regents of Univ. of Cal.*, 156 Cal. App. 4th 809, 833 (2007) (affirming summary judgment for students against university for breach of contract where the language regarding the professional degree fee "in the catalogues and on the website" was a "specific promise" not to raise it for the duration of the students' enrollment in the program); *Reynolds v. Sterling College, Inc.*, 170 Vt. 620, 621 (2000) (concluding that plaintiffs were entitled to summary judgment on their contract claim because "[a]t the time the contract was formed—when plaintiffs paid the enrollment fee and signed the registration statement—the catalog stated the effective refund policy," which was not honored by the college).

[24] 98 F. Supp. 3d at 1035; *see also Cent. Am. Health Scis. Univ., Belize Med. Coll. v.*

Here, the University offers two types of instruction: in-person and online.[25] In terms of tuition alone, in-person instruction costs $27,125 per semester, or approximately $1,506–2,260 per credit,[26] while online costs $665–895 per credit.[27] So the University charges more than double for in-person, as opposed to online, instruction. And in its publications, the University expressly and impliedly promised students an in-person and on-campus educational experience, describing each student's benefit-of-the-bargain in paying for the full in-person experience:

- WUSTL's campuses are located near the cultural center of St. Louis, surrounded by and adjacent to museums, performance venues, vibrant entertainment and dining districts, one of the nation's largest civic parks, and beautiful, tree-lined neighborhoods rich in history and diversity….[T]he best things in St. Louis are just steps from campus where the knowledge and resources of this city are yours for the taking. (¶ 24.)

- WUSTL boasts an impressive faculty deeply involved on campus and in the larger community. The 7:1 student to faculty ratio and the small, personalized nature allows for more hands-on opportunities to develop real-world skills including experiential learning and analytical rigor for Olin Business School students. (¶ 25.)

- All first-year students are required to live on campus in one of the 10 residential colleges in a part of campus called the "South 40." Defendant describes the South 40 as its own small town, complete with a student government, dining facilities, a fitness center, a technology center, meeting rooms, intramural fields, basketball and sand volleyball courts, and more. A gift shop, a convenience store, a mailroom, and several student-run businesses are located there too. (¶ 27.)

- Students living in the residential college community will get to know others and become involved in numerous activities and organizations. You'll be encouraged and supported in your intellectual development and your relationships with others, including students, faculty, and staff. Moreover, students have the opportunity to participate and lead community programing within their residential college including large sporting events, outdoor music festivals, a formal dance, outings to St. Louis attractions, community service activities, and more. (¶ 27.)

- Many upperclass students live in residential colleges each with its own unique resources, activities, and traditions, including open mic nights, resume advice over donuts, and a toast to graduating seniors on the terrace. Further, Defendant notes that each residential

---

*Norouzian*, 236 S.W.3d 69, 84 (Mo. Ct. App. 2007).

[25] ¶¶ 24–41.

[26] ¶ 39.

[27] ¶ 41.

college also has faculty, student, and staff members dedicated to helping you pursue your personal and educational goals. (¶ 28.)

- As libraries and books are essential to your undergraduate education, WUSTL has 12 libraries that put comfortable study and collaborative spaces within easy reach. (¶ 29.)

- Additionally, WUSTL offers hundreds of opportunities to try new things and enrich your college experience including more than 480 student organizations where students can connect with people who have similar interests or explore a new path. (¶ 30.)

Moreover, the Spring 2020 course listings demonstrate that the University offered live, in-person classes at on-campus locations (for example, generally in Simon Hall or Bauer Leadership Center for Business School classes).[28]

To obtain access to the in-person college experience, Plaintiff and class members applied for and were offered positions as students in the in-person on-campus program. And Plaintiff and class members accepted the University's offer and paid the more than double tuition charged by the University for in-person versus online instruction.[29] But part-way through the semester the University moved their instruction online in response to the pandemic.[30] While this shift was an understandable response to the health crisis facing the country, Plaintiff and class members paid more than they contracted for, *i.e*, for the in-person college experience, during the part of the semester that the University provided them with only online instruction.[31]

This states a claim for breach of contract under Missouri law.[32] The University and the students had a mutual agreement whereby the students would pay for, and the University would provide, in-person instruction.[33] The students paid for this in-person instruction for Spring 2020,

---

[28] ¶ 33. Exhibit A to the FAC (Ex. A). Defendant argues that *Lucero* held that a class schedule was not sufficient to form the basis for a breach of contract claim. *See* Mot. at 11. But the plaintiff in that case "fail[ed] to provide or identify the published class schedule," so there was "nothing in the record for th[e] court to review to determine if the class schedule does, in fact, constitute a specific or discrete promise that forms the basis for [the plaintiff]'s breach of contract claim." 400 S.W.3d at 9. Here, Plaintiff includes a course listing as Exhibit A to the complaint.

[29] ¶ 31.

[30] ¶¶ 54–56.

[31] ¶¶ 68–70, 74.

[32] *Robbe*, 98 F. Supp. 3d at 1037.

[33] *Id.* (mutual agreement); ¶¶ 24–38, Ex. A.

- 7 -

but the University did not provide it for the duration of the semester.[34] And Plaintiff and class members have been damaged by having to pay for a more expensive educational service than the one they received.[35] Indeed, even a University professor acknowledges that students "had already rejected online education when they chose a traditional campus experience like ours."[36]

Thus, courts have allowed virtually identical contract claims to proceed. *See Milanov*, 2020 Mich. Ct. Cl. LEXIS 1, at \*14–15 (permitting students' breach of contract claims for failure to provide on-campus education during COVID-19 pandemic); *Cross*, 2020 WL 4726814, at \*2-3 (same); *McDermott*, 2020 WL 5239892 (same); *see also Robbe*, 98 F. Supp. 3d at 1037; *Alsides,* 592 N.W.2d at 474 n.3 (permitting student plaintiff's breach of contract claim where trade school allegedly failed to provide promised hands-on training); *Ryan*, 494 S.E.2d at 791 (finding that "plaintiff has alleged facts sufficient to support his claim for breach of contract on the basis of the University's failure to provide him a one month rotation in gynecology"); *CenCor, Inc. v. Tolman,* 868 P.2d 396 (Colo. 1994) (permitting breach of contract action where the students allegedly paid for educational services, including modern equipment and computer training, that the defendant vocational school allegedly failed to provide); *Zumbrun v. Univ. of S. California*, 25 Cal. App. 3d 1, 10–11 (1972) (allowing breach of contract claim where the plaintiff "did not receive all that she bargained for" where there was "a contract obligating defendant USC to give the course Sociology 200 consisting of a given number of lectures and a final examination in consideration of the tuition and fees for the course paid by plaintiff" but the "stated number of lectures and the normal type of final examination were not given"). In sum, Plaintiff and class members state a breach of contract claim for the University's failure to provide the promised in-person educational experience during the portion of the Spring 2020 semester affected by the COVID-19 pandemic.

---

[34] *Robbe*, 98 F. Supp. 3d at 1037 (consideration and breach); ¶¶ 31, 54–56.

[35] *Robbe*, 98 F. Supp. 3d at 1037 (damages); ¶ 74.

[36] ¶ 70.

Defendant argues that "there is no case law in Missouri that expressly finds the existence of a contractual relationship between a student and a university."[37] But it overlooks cases Plaintiff cites.[38] Moreover, even the case Defendant relies on states that it does "not foreclose the potential for a contractual relationship to develop between a university and a student" where there is a "meeting of the minds on essential terms."[39] *Nickel* held, however, there was no such meeting of the minds with respect to any restriction on the college's "ability to involuntarily withdraw a student for medical reasons" following her suicide attempt and inpatient treatment in a hospital psychiatric unit.[40] And the court emphasized this holding did not "conflict[] with cases by some courts that have held open the opportunity for a contract to form between a university and student where the student can identify a specific contractual promise for services that was broken and a meeting of the minds can be demonstrated"[41]—as Plaintiff alleges here regarding in-person education.[42]

Likewise, in the other case that Defendant relies on, the court assumed a contractual relationship between the plaintiff law student and the defendant law school but found that the plaintiff had not "alleged or established any specific promise or obligation that [the law school] breached to form the basis of his breach of contract claim."[43] The court acknowledged that "other jurisdictions have held that an educational institution's brochures, policy manuals and other advertisements may form the basis of a legally cognizable contractual relationship between the institution and its students,"[44] as long as a plaintiff can "point to an identifiable contractual

---

[37] Mot. at 9.

[38] *E.g., Robbe*, 98 F. Supp. 3d at 1037; *Weisman*, 2020 WL 2800469, at *5.

[39] *Nickel v. Stephens Coll.*, 480 S.W.3d 390, 397 (Mo. Ct. App. 2015). Mot. at 9.

[40] *Nickel*, 480 S.W.3d at 397.

[41] *Id.*

[42] ¶¶ 24–38, Ex. A.

[43] *Lucero*, 400 S.W.3d at 5. Mot. at 9–11.

[44] *Lucero*, 400 S.W.3d at 5.

- 9 -

promise that the university defendant failed to honor."[45] But the court found that a promise to provide a "positive work and learning environment" was aspirational, as opposed to "objective or quantifiable."[46] Here, conversely, an agreement to pay in-person tuition for an on-campus experience (as the University promised, *see* ¶¶ 24–38) is an objective promise—quantifiable by the different rates of tuition the University itself charges for the different educational formats.[47]

Finally, Defendant argues that Plaintiff cannot rely solely on its usual and customary practice of providing in-person instruction and access to housing and facilities.[48] But Plaintiff relies on that usual practice in conjunction with the University's documentary statements.[49] So Defendant then argues that the usual practice should not dictate the University's obligations during a pandemic.[50] But that misses the point. Its usual and customary practice of providing an on-campus experience is what students expected when they paid over $25,000 for the semester. Absent COVID-19, the University could not have just moved all classes online. That would have been a clear breach. But it is still a breach despite COVID-19—though an understandable one— and the University must compensate students who paid in full for tuition, room and board, and other services without receiving their end of the bargain. *Cf. Milanov*, 2020 Mich. Ct. Cl. LEXIS 1, at *21 ("even when performance has become impossible, a party who was deprived of the promised performance is entitled to a refund of consideration for services not rendered due to impossibility"). Plaintiff states a claim for breach of contract.

---

[45] *Id.*

[46] *Id.* at 6.

[47] ¶¶ 38, 41.

[48] Mot. at 11 (citing *Buxton v. Harsh*, 631 S.W.2d 95, 97 (Mo. Ct. App. 1982), for the proposition that "usages and customs are useful in the interpretation of a contract made with respect thereto, but they cannot make a contract where there is none").

[49] ¶¶ 91–92, 102.

[50] Mot. at 11 n.6.

**IV.    Plaintiff adequately alleges the University's unjust enrichment based on its inequitable retention of money Plaintiff paid for in-person education.**

In *Jennings v. SSM Health Care St. Louis*, the Missouri Court of Appeals stated that a claim for unjust enrichment has three elements: "(1) a benefit conferred by a plaintiff on a defendant; (2) the defendant's appreciation of the fact of the benefit; and (3) the acceptance and retention of the benefit by the defendant under circumstances in which retention without payment would be inequitable."[51] In *Jennings*, the plaintiff doctor had provided the defendant hospital with continuity of employment in its emergency department "while forfeiting other employment opportunities in exchange for the promised severance."[52] The hospital, meanwhile, "retained the very severance it used to induce Dr. Jennings's continued employment."[53] Accordingly, the Missouri Court of Appeals held that the "trial court erred in dismissing" the unjust enrichment claim, because the doctor plaintiff "sufficiently alleged the elements for unjust enrichment."[54]

Likewise, here Plaintiff and class members have conferred a benefit (paid tuition) in exchange for a promise (the in-person campus experience) but the University has knowingly retained the benefit without following through on its promise.[55] This is unequitable and states a claim for unjust enrichment under Missouri law. *See Jennings*, 355 S.W.3d at 536; *Rental Co., LLC v. Carter Grp., Inc.*, 399 S.W.3d 63, 66 (Mo. Ct. App. 2013) (reversing judgment on unjust enrichment claim where the plaintiff "conferred the benefit of two loans" on the defendant, who returned no money until "well after the due date to repay both loans").[56] And courts have

---

[51] 355 S.W.3d 526, 536 (Mo. Ct. App. 2011) (citing *Hertz Corp. v. RAKS Hosp., Inc.*, 196 S.W.3d 536, 543–44 (Mo. Ct. App. 2006) ("Hertz has adequately pleaded a claim for unjust enrichment" where "Hertz conferred a benefit upon RAKS by inadvertently paying its tax bill, which benefit RAKS has accepted, retained and appreciated, and the retention of those benefits without payment to Hertz is inequitable")).

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] ¶¶ 24–38, 54–56, Ex. A.

[56] *See also Hawkins v. Nestle U.S.A. Inc.*, 309 F. Supp. 3d 696, 708 (E.D. Mo. 2018) (finding "unjust enrichment claim [] sufficiently pled under Missouri law" where "Plaintiff alleges that a benefit was conferred on Defendant in the form of payment of the purchase price for the slack-filled products by her and the putative class members, and that it would be unjust to permit Defendant to retain the benefit in view of the packaging, which misled purchasers about the

permitted the claim based on facts just as those alleged here. *Milanov*, 2020 Mich. Ct. Cl. LEXIS 1, at *17–19 (permitting students' unjust enrichment claim for failure to provide on-campus education during COVID-19 pandemic); *Cross*, 2020 WL 4726814, at *2–3 (same); *McDermott*, 2020 WL 5239892 (same).[57]

Defendant argues that its retention of the full tuition and other fees is not inequitable.[58] But this ignores allegations that Plaintiff and class members conferred a benefit on the University (full tuition) in exchange for a promise (the in-person campus experience) while the University has knowingly retained the benefit without following through on its promise.[59] While the switch to distance learning was understandable given the pandemic, the University's failure to refund the difference in tuition for in-person and online education was not. While universities have access to additional funding, such as endowments, insurance, PPP loans[60] and/or the contingency funds the University acknowledges in its motion,[61] parents often save throughout their offspring's entire childhood for them to have the opportunity *to go off to college*. Watching lectures on Zoom from a childhood bedroom—while the University retains the full benefit of tuition for a promised in-person education it did not provide—is not a fair exchange for the significant sacrifice so many families make in saving to send their kids to college. Thus, contrary to Defendant's argument, its retention of the full tuition amount is inequitable.

---

amount of product inside"); *Leisman v. Archway Med., Inc.*, 53 F. Supp. 3d 1144, 1149 (E.D. Mo. 2014) (denying motion to dismiss unjust enrichment claim where the "Plaintiffs assert that Defendant obtained benefits from Plaintiffs, yet failed to provide Plaintiffs their due commission, instead inequitably retaining the benefits.").

[57] *Anderson v. Bass Pro Outdoor World* is inapposite, because there the plaintiffs, once at the defendant retail store, voluntarily chose to enter into transactions where they "received the benefits they bargained for." 355 F. Supp. 3d 830, 839 (W.D. Mo. 2018). Mot. at 12.

[58] Mot. at 12.

[59] ¶¶ 24–38, 54–56, Ex. A.

[60] ¶ 76 (University "received $22.4 million in federal stimulus aid under the CARES Act").

[61] Mot. at 12-13 (citing *Moss v. Wayne State Univ.*, No. 286034, 2009 WL 4344193, at *2 (Mich. Ct. App. Dec. 1, 2009)). The Michigan state court in *Milanov* distinguished *Moss* because the plaintiffs in *Milanov* alleged that "they received a lesser education than that which they stood to receive from live, in-person instruction." 2020 Mich. Ct. Cl. LEXIS 1, at *18-19 (denying motion to dismiss unjust enrichment claims).

**V.     Plaintiff adequately alleges a conversion claim based on the University's deprivation of Plaintiff's right to the in-person education he purchased.**

Under Missouri law, "[t]here are three elements which must be established to prove conversion: (1) plaintiff was the owner of the [personal] property or entitled to its possession; (2) defendant took possession of the property with the intent to exercise some control over it; and (3) defendant thereby deprived plaintiff of the right to possession."[62]

In Missouri, "[p]ersonal property is defined as any movable or intangible thing that is subject to ownership and not classified as real property."[63] Similarly, "[p]ersonal chattel is defined as a tangible good or an intangible right."[64] In *Weicht*, the Missouri Court of Appeals held that the plaintiffs' newspaper "routes qualify as such personal property."[65] Just as the plaintiffs in *Weicht* had an ownership interest in their right to work at certain locations (their routes), here Plaintiffs and class members have an ownership interest in their right to be educated at a certain location (on campus). Indeed, the "traditional limitation that conversion applied solely to tangible personal property has eroded."[66] And where "intangible rights are merged in or identified with some document, conversion may be maintained."[67] Matriculation documents would, of course, identify Plaintiff and class members as students paying in-person tuition rates for the on-campus experience. This satisfies the first element.

As to the second and third elements, *Cole v. Control Data Corp.* in instructive. There, the Eighth Circuit affirmed judgment for a software developer on a conversion claim he brought

---

[62] *Manzer v. Sanchez*, 985 S.W.2d 936, 940 (Mo. Ct. App. 1999).

[63] *Weicht v. Suburban Newspapers of Greater St. Louis, Inc.*, 32 S.W.3d 592, 600 (Mo. Ct. App. 2000).

[64] *Id.*

[65] *Id.* This holding was with respect to a claim for trespass to personal property; on the conversion claim the court did not address the issue because the trial court did not challenge the proposition that "routes are intangible personal property which may be the subject of conversion." *Id.* at 596.

[66] *J & J Sports Prods., Inc. v. Garcia*, No. 4:13 CV 2416 DDN, 2014 WL 2644194, at *4 (E.D. Mo. June 13, 2014).

[67] *Breece v. Jett*, 556 S.W.2d 696, 709 (Mo. Ct. App. 1977).

against his former employer.[68] The defendant employer argued that it had not deprived the plaintiff developer of access to a software program he had written. The Court disagreed. Instead, the Eighth Circuit recounted evidence that the employer had ordered the employee "to delete his program from the company computers, refused [his] request to make a copy of the program, and told [him] that another computer programmer would check the computers and diskettes at the end of the day to make sure that [he] had complied."[69] The Eighth Circuit found this "ample evidence" to support the jury's finding that the employer deprived the employee "of access to and possession of the program."[70] So too here.

Plaintiff and class members paid for the right to have access to the University's campus and in-person educational services, including in its lecture halls, laboratories, libraries, student centers, dining halls, and dorms.[71] Instead, in response to the pandemic, the University denied access to campus and deprived Plaintiff and class members of in-person education by instructing undergraduate students "to complete the remainder of the Spring coursework off campus at their permanent home residences" and by requiring students remaining in the undergraduate housing during spring break "to leave university residence halls and university apartments for the rest of the Spring semester."[72] In short, despite Plaintiff and class members having paid for access to campus and the in-person education offered there, the University closed its campus to in-person education, evicted students from on-campus housing, and eliminated access to university facilities.[73] This states a claim for conversion under Missouri law.

---

[68] *Cole v. Control Data Corp.*, 947 F.2d 313 (8th Cir. 1991).

[69] *Id.* at 318.

[70] *Id.*

[71] ¶¶ 24–38, Ex. A. *See Fehrman v. Pfetzing*, 917 S.W.2d 600, 603 (Mo. Ct. App. 1996) (remanding for new trial on conversion claim where there was substantial evidence that "Plaintiff was entitled to immediate possession and control over the [boat] by virtue of Plaintiff's 'arrangement' with Defendant").

[72] ¶ 55. *Cole*, 947 F.2d at 318 ("Missouri law provides that the aggrieved party in a conversion action need have only a *right*—not an exclusive right—to the property in question.").

[73] ¶¶ 95–122. *Cf. Weicht*, 32 S.W.3d at 597 (affirming summary judgment on conversion claim where "Suburban Newspapers never deprived Appellants of their right to possession or control of their routes. For example, Appellants do not allege that Suburban Newspapers

- 14 -

Defendant argues that "a claim for money may not be in conversion because conversion lies only for a specific chattel which has been wrongfully converted."[74] But Plaintiff and class members do not allege that their money has been converted; they allege that their intangible right to an on-campus and in-person educational experience has been converted.[75] To be sure, the remedy for this is monetary damages. As the Missouri Court of Appeals has stated, the "measure of damages in an action for conversion of ordinary personal property is the reasonable market value of the personal property at the time of the conversion."[76] But that does not mean that the claim is one for conversion of money. Instead, "evidence tending to prove the value within a reasonable time before or after a conversion" will establish damages.[77] Here the difference between the University's online and in-person tuition is such evidence.

At the very least, the right to possession and its deprivation "are fact issues best reserved for a later stage of litigation."[78] So "Plaintiff's allegations, taken as true, are sufficient to survive dismissal."[79]

## CONCLUSION

Plaintiff respectfully requests the Court to deny the University's motion to dismiss in its entirety; however, if the motion is granted in any part, Plaintiff requests leave to amend. *See Frey v. City of Herculaneum*, 44 F.3d 667, 672 (8th Cir. 1995) ("Leave to amend should be granted liberally when justice so requires.").

---

prevented them from distributing newspapers on their routes or in any other way prevented use of their routes by Appellants.").

[74] Mot. at 13.

[75] ¶¶ 121–22. *See Weicht*, 32 S.W.3d at 600.

[76] *Breece*, 556 S.W.2d at 709.

[77] *Id.*

[78] *Weisman*, 2020 WL 2800469, at *20.

[79] *Id.*

010920-20/1331717 V1

Dated: September 4, 2020

Respectfully submitted,

By: */s/ Daniel J. Kurowski*_____

David L. Grebel
NIEMEYER, GREBEL & KRUSE
211 N. Broadway, Suite 2950
St. Louis, MO 63102
(314) 241-1919
*grebel@ngklawfirm.com*

Steve W. Berman (12536(WA))
(Admitted *Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292
*steve@hbsslaw.com*

Daniel J. Kurowski (6286656(IL))
(Admitted *Pro Hac Vice*)
Whitney K. Siehl (6313995(IL))
(Admitted *Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
(708) 628-4949
*dank@hbsslaw.com*
*whitneys@hbsslaw.com*

Elaine T. Byszewski (222304(CA))
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
(213) 330-7150
elaine@hbsslaw.com

*Attorneys for Plaintiff and the Putative Class*