UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| ALEXANDER RAIMO, individually and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>WASHINGTON UNIVERSITY IN ST. LOUIS<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No.: 4:20-CV-00634-SEP |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO STAY AND BIFURCATE DISCOVERY**

Plaintiff Alexander Raimo filed a four-count Amended Complaint against Washington University in St. Louis (the "University") alleging that the University's transition to a remote learning environment in the face of COVID-19 diminished the quality and value of the education provided, entitling him to a tuition refund. Plaintiff seeks relief on a classwide basis and proposes that discovery proceed, without delay, on his individual claims and the putative class members' claims, before certification has been considered.

The University, however, has filed a Motion to Dismiss that seeks dismissal of *all* of Plaintiff's claims under Missouri's well-developed educational malpractice doctrine, which completely bars claims sounding in the quality or value of educational services, and that seeks dismissal of *each* of Plaintiff's claims separately for failure to state a claim—not least because the University never made the promise of exclusively in-person instruction that underlies each of Plaintiff's claims. The University's Motion, which is very likely to succeed given the consistent and recent precedent of the Eighth Circuit and Missouri appellate courts, would resolve all claims with prejudice, obviating the need for any discovery. As such, to preserve the parties' and the

Court's time and resources, a stay of discovery should be granted pending the Court's resolution of the University's Motion to Dismiss.  Moreover, in the unlikely event discovery becomes necessary, it should be bifurcated to allow resolution of whether the proposed class should be certified at the earliest possible opportunity and before merits discovery on the classwide claims is permitted to proceed.

## LEGAL STANDARD

"A district court's 'power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Physicians Home Health Infusion, P.C. v. UnitedHealthcare of the Midwest, Inc.*, No. 4:18CV01959 PLC, 2019 WL 4644021, at *2 (E.D. Mo. Sept. 24, 2019) (citations omitted).  "While the filing of a motion to dismiss is insufficient in and of itself to support a stay of discovery, ***a litigant may obtain a stay of discovery pending disposition of a motion to dismiss***." *Id.* at *3 (citations omitted) (emphasis added); *see also Nelson v. Maples*, 672 F. App'x 621, 621 (8th Cir. 2017) (concluding "the district court did not abuse its discretion in granting a motion to stay discovery" while a motion to dismiss under Rules 12(b)(1) and 12(b)(6) was pending).

> In resolving whether to stay discovery pending disposition of a motion to dismiss, a court considers various factors "including: (1) whether the movant has shown a likelihood of success on the merits of the dispositive motion; (2) hardship or inequity to the moving party if the matter is not stayed; (3) prejudice to the non-moving party [if the matter is stayed]; and (4) the conservation of judicial resources."

*Physicians Home Health Infusion, P.C.*, 2019 WL 4644021, at *3.

## ARGUMENT

**I.      The University's Motion to Dismiss is Likely to Succeed.**

"To satisfy the 'likelihood of success' factor for a stay of discovery, a litigant 'must show more than the mere possibility' of success on its motion to dismiss, but 'is ***not*** required to demonstrate a greater than fifty percent probability' that the motion to dismiss will be successful." *Physicians Home Health Infusion, P.C.*, 2019 WL 4644021, at *3 (emphasis added).

The University's Motion to Dismiss shows far more than a mere possibility of success. All of Plaintiff's claims are subject to dismissal under Missouri's educational malpractice doctrine, and each of his claims are independently subject to dismissal for failure to state a claim.

First, according to Plaintiff's Amended Complaint, all of his claims for relief are based on the claim that the "online classes provided by Defendant are objectively different from—and less valuable than—the on-campus classes for which the parties contracted." (Am. Compl. ¶ 96; *see also id.* ¶ 61 (complaining that the "online educational experience[]" the University provided was "vastly different from what Plaintiff and Class Members contracted and paid for"); *id.* ¶ 2 (describing the transition to online courses as "something far less" than what the putative class members had bargained for).) Plaintiff's claims are the very types of claims that Missouri courts, this Court, and the Eighth Circuit have repeatedly found are barred by the educational malpractice doctrine:

> ***A claim that educational services provided were inadequate, substandard, or ineffective constitutes a claim of educational malpractice***. Where the court is asked to evaluate the course of instruction or the soundness of the method of teaching that has been adopted by an educational institution, the claim is one of educational malpractice.
> . . .
> ***Missouri courts have "refuse[d] to recognize a claim for educational malpractice"*** because it is not the role of courts "to micromanage a university's daily operations."

3

*Soueidan v. Saint Louis Univ.*, 926 F.3d 1029, 1034–35 (8th Cir. 2019) (citations omitted) (emphasis added); *see also Dallas Airmotive, Inc. v. FlightSafety Int'l, Inc.,* 277 S.W.3d 696, 699 (Mo. Ct. App. 2008); *Roe v. Saint Louis Univ.*, No. 4:08CV1474 HEA, 2012 WL 6757558, at *10 (E.D. Mo. Dec. 31, 2012), *aff'd*, 746 F.3d 874 (8th Cir. 2014).  Regardless of how Plaintiff attempts to cast his claims—in contract or in tort—the doctrine remains applicable.  *Soueidan*, 926 F.3d at 1034 (holding "courts have refrained from recognizing educational malpractice claims, **either in tort or contract**") (emphasis added).  While Plaintiff protests that he does not seek to call the quality or value of the online classes he received during the pandemic into question, the inquiries that justify the doctrine—for instance, the difficulties inherent in determining damages tied to the quality of an education—are fundamentally unavoidable here.  (Def.'s Reply in Supp. of Mot. to Dismiss at 4–5 ("Reply").)

Further, even apart from the educational malpractice doctrine, each of Plaintiff's claims fails for an independent reason.  Plaintiff's contract claims fail because no Missouri court has ever found an implied contract to exist between a student and a university for the provision of educational services.  Plaintiff does not (and cannot) point to any explicit language promising him an exclusively in-person education no matter the circumstances, and the materials he highlights as showing an implied "meeting of the minds" do nothing of the sort.  Indeed, the University's arguments that Plaintiff has failed to show any intent of the University to bind itself to provide him with only in-person instruction remain unrebutted.

Plaintiff's unjust enrichment claim similarly fails.  Unable to show a promise of in-person education, Plaintiff resorts to highlighting the disparate financial resources of the University and individual families.  The test for unjust enrichment is not which party is more sympathetic, but

4

rather, whether (as here) a student continues to receive benefits from the University's expenditure of his tuition and fees.  (Reply at 9.)

Likewise, Plaintiff's conversion claim fails because the right he claims was converted—the right to in-person instruction and to access campus spaces—is a purely intangible one, which Missouri courts do not recognize as cognizable on a conversion claim. (*Id.* at 9–10.)  Last, Plaintiff leaves unrebutted the University's argument that his unjust enrichment and conversion claims serve as an impermissible end-run around clear Missouri law limiting the kinds of obligations students may enforce against their universities. (*Id.* at 11.)

Given the clear shortcomings with respect to Plaintiff's claims both collectively and individually, there is far more than a "mere possibility" of the University's success at the motion to dismiss stage.  Indeed, *Soueidan*, upheld by the Eighth Circuit only last year, was decided on the pleadings before any discovery had been conducted.  *See Soueidan v. Saint Louis Univ.*, No. 4:17-CV-2777RLW, 2018 WL 1997287, at *5 (E.D. Mo. Apr. 27, 2018).  As such, there is a high likelihood that the University's Motion to Dismiss will succeed, weighing in favor of staying discovery pending this Court's decision on the Motion.

**II.     Denial of the Motion to Stay Would Impose a Hardship on the University.**

In assessing whether the denial of a stay will cause a hardship, the Court should consider the "costs the proponent of the stay may incur in responding to discovery . . . during the pendency of its potentially meritorious dispositive motion in light of the general principle that 'courts disfavor the proliferation of litigation costs associated with potentially unnecessary litigation.'" *Physicians Home Health Infusion, P.C.*, 2019 WL 4644021, at *5 (citing *Dufrene v. ConAgra Foods, Inc.*, No. 15-cv-2796 (WMW/LIB), 2016 WL 10651947, at *4 (D. Minn. Apr. 7, 2016)).

Plaintiff Raimo has brought a putative class action and seeks discovery on all issues—both on an individual and classwide basis—now, before the Court has either ruled on the pending

5

dispositive motion or determined whether this case meets Rule 23's requirements. The hardship imposed on the University of conducting wholly unnecessary discovery should its Motion to Dismiss be granted is only compounded by the fact that classwide discovery would multiply the burden many thousands of times over. (*See, e.g.*, Am. Compl. ¶ 79 (alleging thousands of students are potentially class members).)

Plaintiff's proposed class includes "All persons enrolled at Defendant for the Spring 2020 term" (Am. Compl. ¶ 77). As defined, Plaintiff's proposed class includes students enrolled in each of the University's seven different schools—Arts & Sciences, the Brown School, McKelvey School of Engineering, Olin Business School, Sam Fox School of Design & Visual Arts, the School of Law, and the School of Medicine. Thus, the proposed class includes undergraduate and graduate students on both the University's Danforth and Medical School campuses. Not only does each school have its own document repositories, but even within schools, there can be different databases of relevant documents depending on the specific program offered. Simply put, there is no central repository containing relevant documents for all of the thousands of students enrolled at the University in Spring 2020. Indeed, even for a single class member at a single school, information may be located in multiple repositories—ranging from databases and systems tracking degree requirements and progress, to financial aid and payment information, to utilization of student resources. In short, without even having the benefit of Plaintiff's actual requests to review, the heavy burden of even limited classwide discovery is undeniable.

Indeed, aside from the general burden that classwide discovery necessarily entails, the burden is especially great now, when the University is back in session and providing educational services, while the COVID-19 pandemic continues to force many of its personnel to work remotely. The University is operating under an alert level system that uses four levels to indicate

6

the severity of COVID-19 transmission in the St. Louis Region and/or on campus. At present, the University is operating at "High Alert (Orange)," which allows only limited activities on campus. Thus, the University is still not in a position to allow all personnel back on campus (and to date there is no definitive time frame for it doing so), further hampering the University's ability to quickly gather responsive documents and necessary information.

In short, the nature of classwide discovery and the current circumstances both indicate the University would suffer a substantial (and, if its Motion is granted, totally unnecessary) hardship were it forced to proceed with discovery now. This factor weighs in favor of a stay.

### III.   A Stay Would Not Prejudice Plaintiff.

Plaintiff will suffer no prejudice by a brief stay pending this Court's decision on the University's Motion to Dismiss. The University's Motion to Dismiss does not require any discovery to allow Plaintiff's to respond. *See generally Soueidan*, 2018 WL 1997287 (dismissing the plaintiff's complaint based on Missouri's educational malpractice doctrine before any discovery had been conducted). There are no other time-sensitive matters that would require discovery to commence immediately, further weighing in favor of a stay.

### IV.   A Stay Would Conserve Judicial Resources.

"In determining whether a stay of discovery until the resolution of a pending dispositive motion would conserve judicial resources, a court examines the breadth of any pending discovery and whether the pending dispositive motion has the potential to resolve the litigation." *Physicians Home Health Infusion, P.C.*, 2019 WL 4644021, at *6 (citation omitted).

As set forth above, the University's Motion to Dismiss does have the potential to resolve the litigation (completely and finally) as it addresses each of Plaintiff's claims. While Plaintiff has not yet served discovery that the Court can evaluate, given that Plaintiff has proposed that individual and classwide discovery proceed in tandem, discovery will undoubtedly be broad and

7

burdensome. Further, while the University will attempt to resolve any discovery disputes that may arise with Plaintiff, in cases of this size, discovery almost inevitably leads to some discovery disputes reaching the Court. Thus, this Court's judicial resources would very likely be better preserved by postponing discovery (and any discovery disputes) until the Court can first determine if this dispute is even one the Court can consider (it is not). This factor, too, favors a stay.

## V. Should the University's Motion to Dismiss be Denied in Whole or in Part, the Court should Bifurcate Discovery.

While the University believes that the grant of a stay will ultimately preclude the necessity of determining how discovery should be conducted (given the likelihood of success of its Motion to Dismiss), should the University's pending Motion not completely resolve this dispute, discovery should be bifurcated.

Federal Rule 23(c)(1) provides that "[a]t an ***early practicable time*** after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1) (emphasis added). "To make early class determination practicable and to best serve the ends of fairness and efficiency, courts may allow classwide discovery on the certification issue and postpone classwide discovery on the merits." *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1570–71 (11th Cir. 1992); *see also Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 933 (N.D. Ill. 2013) ("While the Court recognizes that the class certification and merits issues may overlap in some respects, this alone is not enough to overcome the efficiency benefits to be gained from bifurcated discovery."); *Ingersoll v. Farmland Foods, Inc.*, No. 10-6046-CV-SJ-FJG, 2011 WL 1131129, at *4 (W.D. Mo. Mar. 28, 2011) (re-affirming bifurcated scheduling order). "[I]n cases that are unlikely to continue if not certified, discovery into aspects of the merits unrelated to certification delays the certification decision and

8

can create extraordinary and unnecessary expense and burden." Manual for Complex Litigation (Fourth) § 21.14.

Dividing discovery into two phases—focusing first on Plaintiff's individual claims (to the extent they survive the Motion to Dismiss) and on class certification, followed by discovery on classwide liability and damages if necessary—best serves the goal of conserving the resources of the parties and the Court. Discovery into classwide injury and damages (if any) would require the production of voluminous private educational and financial records. Such discovery would be unnecessary either for Plaintiff to move for class certification or for the University to oppose class certification. Because this highly sensitive and burdensome discovery might be avoided altogether, it should be deferred only if and until it becomes necessary. Unless and until the Court grants class certification, the only discovery that is necessary and proportional to the needs of the case is discovery concerning the requirements of Rule 23 (including Plaintiff's adequacy and typicality as a class representative) and the merits of his individual claims.

Therefore, should discovery become necessary, it should be bifurcated to allow resolution of the class certification inquiry at the earliest possible opportunity before classwide merits discovery occurs.

## CONCLUSION

Given the likelihood of success on the University's Motion to Dismiss and the prejudice the University would suffer were it forced to proceed with burdensome classwide discovery, a stay of discovery is justified. Such a stay would not prejudice Plaintiff and would further act to conserve judicial resources by avoiding costly discovery disputes that are likely to be wholly unnecessary. Therefore, the University respectfully requests a stay of discovery and, in the event discovery ultimately becomes necessary, an order providing for bifurcated discovery to facilitate the early resolution of certification.

Dated: September 18, 2020

Respectfully submitted,

*/s/* Winthrop B. Reed, III
Winthrop B. Reed III, #42840MO
R. Taylor Matthews, III, #60936MO
Sarah A. Milunski, #65112MO
LEWIS RICE LLC
600 Washington Avenue, Suite 2500
St. Louis, Missouri 63101
Tel.: (314) 444-7600
Fax: (314) 241-6056
Email: wreed@lewisrice.com
           tmatthews@lewisrice.com
           smilunski@lewisrice.com

Alan E. Schoenfeld (*pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: (212) 937-7294
Fax:  (212) 230-8888
Email: alan.schoenfeld@wilmerhale.com

*Attorneys for Defendant Washington University in St. Louis*